UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:25-CR-00448-CMS-JMB |
| v. | ) |
| | ) |
| ALFRED MONTGOMERY, | ) |
| | ) |
| Defendant. | ) |

## SHERIFF ALFRED MONTGOMERY'S
## MOTION TO REVOKE ORDER OF DETENTION

Sheriff Alfred Montgomery, by and through his undersigned counsel, Justin K. Gelfand, William S. Margulis and the law firm Margulis, Gelfand, DiRuzzo & Lambson, respectfully moves the District Court, pursuant to 18 U.S.C. § 3145(b), to revoke the Order of Detention entered on October 14, 2025. (Doc. 45). Sheriff Montgomery requests that this Court order him released, under 18 U.S.C. § 3142(c), subject to a combination of conditions of release that will reasonably assure his appearance at trial and the safety of the community or any other person. Sheriff Montgomery remains the sitting, elected Sheriff of St. Louis City, and this Court should not interfere with the results of a free and fair election by detaining Sheriff Montgomery and preventing him from fulfilling his sworn law enforcement duties.

In conducting its *de novo* review of an order of detention, this Court must operate under the maxim that "[l]iberty is the norm," and detention prior to trial is "the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Specifically, Eighth Circuit precedent clearly requires the Government to show "by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions under [3142(c)] will

1

*reasonably assure* the defendant's appearance" to justify an order detaining a defendant pending trial. *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (internal quotations omitted).

On August 27, 2025, Sheriff Montgomery was indicted on one count of deprivation of rights under color of law, in violation of 18 U.S.C. § 242. (Doc. 1). On August 28, 2025, Sheriff Montgomery made his initial appearance, pleaded not guilty, and was released on conditions of release under 18 U.S.C. § 3142(b) and (c) following a "Bond Execution Hearing." (Doc. 5, 9, 10). On October 8, 2025, the Grand Jury returned a superseding indictment adding four counts of witness retaliation, in violation of 18 U.S.C. § 1513, and one count of witness tampering, in violation of 18 U.S.C. § 1512. (Doc. 28). Also on October 8, 2025, the Government filed a Motion for Pretrial Detention, which the court below construed as a motion to revoke Sheriff Montgomery's pretrial release even though it was not characterized as such and did not even cite the bond revocation statute. (Doc. 31). On October 9, 2025, Sherrif Montgomery was arraigned on the superseding indictment, pleaded not guilty to all counts, and was once again released on conditions, this time including the modification of adding electronic location monitoring. (Doc. 32, 35). It was undisputed based on under-oath testimony from Pretrial Officer Mallory Griep that Sheriff Montgomery's performance on the modified bond was flawless and his compliance was perfect.

Sheriff Montgomery filed a response in opposition to the Government's motion for detention on October 12, 2025. (Doc. 40). On October 14, 2025, the Magistrate Judge conducted a hearing on the Government's motion. (Doc. 42). Following that hearing, Sheriff Montgomery's order of release was revoked, and he was ordered detained pending trial. (Doc. 45).

Under 18 U.S.C. § 3148, which works in conjunction with 18 U.S.C. § 3142, and subject to this *de novo* review, "the judicial officer" must find: (1) probable cause that the defendant

2

committed a new "crime while on release;" or "clear and convincing evidence of a violation of release conditions." Following that finding, there needs to be a further finding, "based on the factors set forth in section 3142(g)," that "there is no condition or combination of conditions of release that will assure that the person will not flee of pose a danger to the safety of any other person or the community . . . or . . . the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b). Of particular note here, a "rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community" upon a finding of probable cause that a new crime was committed. 18 U.S.C. § 3148(b).

At the outset, the court below did not allow, as is required under 18 U.S.C. § 3142(f), Sheriff Montgomery a full "opportunity . . . to present witnesses . . . and to present information." 18 U.S.C. § 3142(f). To be clear, the entire basis for bail revocation in this case is that a grand jury returned a superseding indictment. Pretrial Officer Mallory Griep outright admitted the sole basis for her petition to revoke bond was *the existence* of the superseding indictment. However, under 18 U.S.C. § 3148, it is "*the judicial officer*" that must find probable cause, triggering the rebuttable presumption. Thus, while a grand jury's finding of probable cause—which, of course, happens behind closed doors without any ability for the defense to put on evidence or to challenge the evidence or testimony presented—may be appropriate to consider, this Court, in its *de novo* review, is not required to substitute the grand jury's determination of probable cause for its own. This is especially true where, as here, there is contrary evidence as set out below. *See United States v. Mackie*, 46 F.3d 66 (5th Cir. 1995) (unpublished) (found at 1995 WL 29300, at *2) ("The superseding indictment handed down by the grand jury was sufficient especially here where there was *no contrary evidence* to warrant a reasonable belief that Mackie induced travel in execution

3

of a scheme to defraud in violation of 18 U.S.C. § 2314 while released on bail." (emphasis added)). And this is what Sheriff Montgomery attempted to present at the hearing. Sheriff Montgomery attempted to call a retired state judge, who also serves as an attorney with the St. Louis City Sheriff's Office, to elicit testimony that would, without overstating, negate the probable cause implicit in the superseding indictment and eliminate the rebuttable presumption set forth in Section 3148. The court below denied Sheriff Montgomery that opportunity, even though it is protected by statute. To be clear, the prosecution was permitted to call its witness of choice: Pretrial Services Officer Mallory Griep, who merely testified that the superseding indictment exists, that she has no knowledge of the allegations in the superseding indictment, and that other witnesses exist that would be able to provide testimony as to the actual facts surrounding the events alleged in the superseding indictment. That the prosecution that brought this case was *opposed* to the introduction of evidence of Sheriff Montgomery's actual innocence is stunning and speaks volumes to the strength of the prosecution's case. This Court, in its *de novo* review, should not make subsequent findings without considering this evidence and testimony.

However, even if this Court were to find probable cause, thereby establishing that a rebuttable presumption applies, this Court should conclude that there are conditions of release that will assure Sheriff Montgomery will not pose a danger to the safety of the community and should, if necessary, "amend the conditions of release accordingly." 18 U.S.C. § 3148(b). In that respect, this Court must also consider the factors set out in Section 3142(g), and that consideration is under the requirement that "the judicial officer . . . take into account the available information." 18 U.S.C. § 3142(g). This requirement was also disregarded by the court below. As discussed above, and equally applicable here, Sheriff Montgomery attempted to exercise his statutory right to present witnesses at the hearing, and that was expressly denied even though the defense's proffered witness

4

was literally outside the courtroom prepared to testify. In a parallel to the finding of probable cause, the proposed testimony would have gone directly to the Section 3142(g)(2) factor, which is "the weight of the evidence against the person," and to the Section 3142(g)(1) factor of "the nature and circumstances of the offense charged."

Thus, in determining whether probable cause applies *and* in assessing the weight of the evidence against the person and the nature and circumstances of the offense charged, the underlying facts of the new counts against Sheriff Montgomery merit this Court's consideration.

For instance, Count Four of the superseding indictment alleges that Sheriff Montgomery terminated employee T.S.1 on September 11, 2025 "for providing to a law enforcement officer truthful information relating to the commission and possible commission of a Federal offense." (Doc. 28). But that is not at all what the evidence will show happened. This employee was terminated after a committee consisting of a retired state judge—the same one offered as a witness in the detention hearing—the head of human resources for the Sheriff's Office, and a colonel with more than 30 years of experience, held a formal hearing regarding this employee's misconduct and recommended that the sheriff immediately terminate her employment. Sheriff Montgomery's involvement in terminating T.S.1 on September 11, 2025 consisted of simply following the committee's advice. Indeed, T.S.1 initially failed to even appear for her hearing and, immediately prior to it, staff discovered that she had shredded documents despite a clear instruction to preserve and not destroy any documentation—not that she needed one; she has an educational background in legal studies. But this was found just outside her office door:



Despite being terminated for her misconduct—*at the committee's recommendation and not for providing truthful information to law enforcement*—she returned to the courthouse at approximately 3:20 a.m. that night, entered what was her office, despite it being sealed shut with red tape to preserve any other evidence that may have existed inside, and left the courthouse approximately 30 minutes later with boxes of unknown materials. This was captured on courthouse surveillance video:





The Sheriff's Office turned the shredded documents over to the St. Louis Metropolitan Police Department—but the prosecution team in this case has absolutely no idea what evidence

6

T.S.1 destroyed *prior to being terminated* and/or what she removed from the office in the middle of the night while nobody was around.

Counts Two and Three—which do not form the basis of a probable cause finding under 18 U.S.C. § 3148 because they predate the initial indictment—share a similarly interesting backdrop and absolutely should be considered in this Court's analysis of the Section 3142(g) factors. In Count Two, the prosecution alleges that Sheriff Montgomery demoted W.H. on July 29, 2025 "with the intent to retaliate" against him and Count Three alleges that, on March 7, 2025, Sheriff Montgomery tampered with W.H. as a witness by directing "him to alter [his] report to change the reason for the detention of T.R." (Doc. 28). But yet again, the actual evidence flies in the face of the allegations.

W.H. gave under-oath testimony in a civil deposition. This is in stark contrast to any meetings he may have had with the prosecution team where the decision not to record questions and answers was purposefully made. W.H.'s under-oath testimony is totally inconsistent with the superseding indictment:

> Q. Now, when you prepared the two respective drafts of the incident report, Sheriff Montgomery never told you to lie, correct?
> A. No, nor would I lie.
> Q. In other words, you wouldn't do that even if someone asked you to, correct?
> A. No.
> Q. But to be clear, my client is Sheriff Montgomery -- I'm not suggesting you would -- but Sheriff Montgomery never suggested that you should be dishonest in any such reports, correct?
> A. No.
> Q. The goal was to get it as accurate as possible, correct?
> A. Correct.

And he made it clear 142 pages later in the transcript:

> Q. (Mr. Gelfand) Okay. So now, as we sit here today, it is true that the sheriff, meaning Sheriff Montgomery, never once asked you to lie in any of the reports that you prepared, correct?
> A. Correct.
> Q. And even if he did, you wouldn't have done that, correct?
> A. No.
> Q. Sheriff Montgomery never once asked you to make a statement in any of those reports that wasn't true, correct?

To be clear, the prosecution's emphasis in Count Three of the "change" in "the reason for the detention of T.R." is a total red herring. As an email 18 days before this alleged crime reflects, Sheriff Montgomery referenced both issues: T.R.'s interference with prompt service of process

8

and T.R.'s interference with the internal affairs investigation by the Sheriff's Office regarding their attempts to "interview a detainee." That email was sent to the presiding judge in the 22nd judicial circuit, the mayor's chief of staff, and a number of other people. More importantly, an abundance of under-oath testimony and other evidence clearly establishes that T.R. did both prior to her alleged detention: she interfered with timely service of process and physically stopped internal affairs investigators from interviewing a material witness in their investigation.

And as to W.H.'s alleged demotion on July 29, 2025 as alleged in Count Three, the prosecution team is entirely ignoring a contemporaneous text message from more than one month earlier where it was recommended to Sheriff Montgomery that W.H. be transferred from his position to an inferior position. What the prosecution team curiously omits from the superseding indictment is that the letter purporting to demote W.H. was signed by T.S.1—the same employee who was found less than two months later having shredded documents; it was *not* signed by Sheriff Montgomery.

As to T.S.2 and the allegations in Count Five, that employee was placed on administrative leave for misconduct that was the subject of a hearing conducted by a distinguished retired state judge, the head of human resources for the Sheriff's Office, and a colonel with more than 30 years of experience. In that hearing, T.S.2 apparently accepted responsibility for his misconduct, expressed remorse, and the committee recommended he be reinstated. In this human resources action, as in the others, Sheriff Montgomery's involvement was that he followed the committee's recommendation. T.S.2 was not retaliated against "for providing to a law enforcement officer truthful information." (Doc. 28).

Finally, the allegation in Count 6—that Sheriff Montgomery retaliated against L.S. on September 15, 2025—is entirely baseless. Sheriff Montgomery did not remove L.S.'s access to

9

the computer system and/or emails and the most basic investigation would have revealed that. And L.S. was not demoted: he never lost a rank (he has always been a major), he never received a reduction in pay, and he never had a change of title. Indeed, despite the statement to the contrary in the superseding indictment, he did not lose his supervisory duties: he remains a major of operations. What did happen is that judges were frustrated because bailiffs were not reliably in courtrooms as expected—and that was largely due to L.S.'s mismanagement. This mattered because it disrupted court proceedings and caused a security risk. These concerns were brought to Sheriff Montgomery's attention from the judiciary in the courthouse. The evidence will establish that L.S. was not retaliated against at all—let alone for providing information to federal law enforcement.

Other information considered by the court below that requires more analysis is the Government's proffer regarding a second cell phone purportedly utilized by Sheriff Montgomery. The Government attempted to engender unnecessary bias by calling it a "burner phone." No evidence of a second phone, let alone the nature of its purchase, ownership, or registration was presented. The Government blindly calling a second cellular phone owned by someone a "burner phone" should be questioned by this Court, especially given the multiple communication devices Government agents and attorneys regularly carry. Discovery regarding this phone was provided to Sheriff Montgomery just prior to the commencement of this hearing and it was not culled out of a larger production. This Court should demand more from the Government in terms of actual evidence, and allow Sheriff Montgomery the opportunity to challenge that evidence if presented at a hearing as required in Section 3142(f).

At bottom, through the new counts, the prosecution is attempting to convert routine employment decisions in an office that employs more than 150 people into felonies, all after the

10

sole misdemeanor crumbled when witnesses were actually placed under oath and asked real questions.

The bottom line is this: the superseding indictment should not form a basis to imprison Sheriff Montgomery while he awaits his trial. He is an elected official with no criminal history who has always appeared in this case as directed. Additionally, even following the arraignment on his superseding indictment and the addition of electronic monitoring, Sheriff Montgomery performed as expected on release, and the Pretrial Services Officer testified to that in the hearing. The Government's 4-paragraph motion for detention includes no compelling basis for detention; rather, it is entirely predicated on Sheriff Montgomery's alleged post-indictment conduct "as reflected in the superseding indictment." (Doc. 31). But the superseding indictment consists of allegations, not evidence—and the actual evidence does not support the allegations. Even following the hearing, the prosecution has not provided sufficient evidence in support of its motion for detention.

As the United States Court of Appeals for the Eighth Circuit has held, "The passage of the pretrial detention provision of the 1984 Act did not…signal a congressional intent to incarcerate wholesale the category of accused persons awaiting trial. Rather, Congress was demonstrating its concern about 'a small but identifiable group of particularly dangerous defendants as to whom neither the impostion [sic] of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons.'" *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* 1984 Code Cong. & Ad. News at 3189).

Consistent with the plain language of the statute and with the intent of Congress, the Act encourages release of the accused pending trial so long as some condition or combination of

11

conditions can reasonably assure the appearance of the accused at trial and the safety of the community or any other person. *Id.* at 890-91. "The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *Id.* at 891. Moreover, "[d]oubts regarding the propriety of release are to be resolved in favor of defendants." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

To be clear, even if this Court were to determine there is probable cause that Sheriff Montgomery committed any of the new counts charged, the bottom line remains: evidence has been presented in the only way the court below allowed (by way of proffer, as the opportunity to present further evidence was denied by court below) that rebuts the presumption and establishes that there are conditions this Court can impose instead of pretrial detention given the unique circumstances of this case. Specifically, given that the entirety of the allegations against Sheriff Montgomery involve employment-related decisions he allegedly made with respect to employees, this Court can impose as an additional condition of release what has already been put into place: that any employment decision be the subject of consideration by a panel including Judge David Mason. Or perhaps that Sheriff Montgomery not be personally involved in any employment decision while this case is pending. But incarcerating him is at least one step too far.

Sheriff Montgomery has deep ties to the Eastern District of Missouri—where he was born and raised, where he has a family to support, and where he is literally an elected official having won a free and fair primary election and a free and fair general election. He self-surrendered when requested to do so. Indeed, the truth of the matter is, throughout the last several months, Sheriff Montgomery has had to face a slew of false allegations brought by governmental entities against him. This has included the allegation by the Missouri Attorney General that he hired his biological brother when that was objectively and plainly false as evidenced by a court order and a DNA test.

12

But Sheriff Montgomery stood tall and has met the Attorney General's politically charged false allegations head on in the court of law. The same mentality rings true in this case: Sheriff Montgomery is prepared to meet these allegations head on, and he sought that opportunity in the detention hearing solely with respect to the statutory considerations under Sections 3142 and 3148. What we are asking this Court to do at this juncture is to revoke the order of detention, which currently deprives this man of his freedom while he awaits trial, and also interferes with the results of a democratic election by imprisoning a sitting elected official who is both presumed innocent as a matter of law and who was prevented by the court below from introducing evidence of his actual innocence—the ultimate injustice. In other words, a finding that the defense failed to rebut a presumption when the defense was prevented from putting on evidence at the hearing should be reversed on *de novo* review as a matter of procedural fairness alone, even setting aside the merits of the arguments before this Court.

This Court should revoke the Order of Detention entered on October 14, 2025. However, if the Court needs more, we welcome the opportunity to supplement this record at an evidentiary hearing where Sheriff Montgomery can exercise his statutorily protected rights to present witnesses in his defense for this Court's consideration.

Respectfully submitted,

**Margulis Gelfand, LLC**

 */s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0230
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Sheriff Montgomery*

13

## Certificate of Service

I hereby certify that the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

**Margulis Gelfand, LLC**

 /s/ *Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0230
Facsimile: 314.485.2264
justin@margulisgelfand.com
*Counsel for Sheriff Montgomery*